## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROGER JANKOWSKI,

        Plaintiff,

v.

LOYOLA HIGH SCHOOL DETROIT,

        Defendant.

Case No.

Hon.

---

David A. Nacht (P47034)
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, Michigan 48108
(734) 663-7550
dnacht@nachtlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Roger Jankowski ("Plaintiff"), by and through undersigned counsel, NACHTLAW, P.C., and hereby respectfully submits the following:

### INTRODUCTION:

1. Plaintiff is a 67-year-old, disabled individual.

2. This case is an action for age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA")

and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.210 *et. seq.*
("ELCRA") against Defendant Loyola High School Detroit ("Defendant").

3.     This case is also an action for disability discrimination in violation of
the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section
504 of the Rehabilitation Act, 28 U.S.C. § 794, *et seq.* ("Section 504"), Michigan's
Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.* ('PWDCRA")
against Defendant.

4.     Generally, the judicially created ministerial exception prevents
ministers from bringing discrimination claims. *Our Lady of Guadalupe Sch. V.
Morrissey-Berru*, 591 U.S. 732, 762 (2020).[1]

5.     The U.S. Supreme Court has not "announce[d] 'a rigid formula' for
determining whether an employee falls within this [ministerial] exception, but [it]
has identified circumstances that [it finds] relevant." *Id*. at 737. Such circumstances
include the employee's job title, educational training, and responsibility to teach
religion and participate in religious activities. *Id*. So, if an employee is a called a
"minister" and/or the employee engages in religious activities, then the employee is

---

[1] In *Lady of Guadalupe*, the Catholic school teachers were expected to model and promote the
Catholic faith and morals, participate in the school's liturgical (worship) activities, and pray with
their students every day. *Guadalupe*, 591 U.S. at 740-744. They were teachers of religion. Their
role was one of governance. Thus, the court found that the ministerial exception applied, and the
teachers were barred from being employment discrimination claims. *Id*. at 766. This is
distinguishable from the present matter.

likely barred from bringing an employment discrimination claim pursuant to the ministerial exception.

6.      However, religious institutions such as Defendant do not enjoy a "general immunity from secular laws." *Id.* at 746. The ministerial exception only applies to employees with spiritual functions, not employees without a spiritual function. *Rosati v. Toledo*, 233 F. Supp. 2d 917, 921 (N.D. Ohio 2002). Even if a person has been named a "minister," if their job responsibilities do not invoke spiritual matters, the ministerial exception does not apply. If the religious autonomy regarding matters of a religious organization, such as Defendant, remains unaffected, then the ministerial exception does not apply.

7.      To that point, the ministerial exception does not apply in the present matter. Plaintiff worked at Defendant, which is a Catholic school; however, he was not a "minister" during any relevant time. Plaintiff was merely the Director of Marketing and Communications at Defendant; his responsibilities did not further the religious mission of the organization. He did not conduct worship services or teach Catholicism at any point.

8.      Plaintiff did not have *any* religious duties whatsoever. Plaintiff was responsible for overseeing all Defendant's public relations, press relations, communications, press releases, telephone calls with third parties, etc. Non-religious

institutions include positions such as Plaintiff's. It does not matter where an employee works, but what their job duties are. *Guadalupe*, 591 U.S. at 753.

9.      Plaintiff's position did not implicate the fundamental purpose of the ministerial exception. Therefore, it does not apply.

10.     But for Plaintiff's age and disability, Defendant would not have terminated him.

11.     Thus, Defendant should be held liable.

## PARTIES, JURISDICTION, AND VENUE

12.     Plaintiff is a 68-year-old, disabled man, residing in Troy, Oakland County, Michigan.

13.     Defendant is a Catholic high school operated by the Jesuit of the USA Midwest Province, located in Detroit, Wayne County, Michigan.

14.     This action arises from a violation of the ADA and Section 504, and as such, this Court has original, federal question jurisdiction pursuant to 28 U.S.C. § 1331 and federal civil rights jurisdiction pursuant to 28 U.S.C. § 1343.

15.     This Court also has supplemental jurisdiction over all state claims, including PWDCRA violations pled herein, pursuant to 28 U.S.C. § 1367.

16.     Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2), as a substantial part of the events or omissions giving rise to the claims occurred therein.

## **CONDITIONS PRECEDENT**

17.     Plaintiff has exhausted his administrative remedies by filing charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

18.     Plaintiff filed with the EEOC a charge of discrimination against Defendant relating to the termination of his employment, being Charge No. 23A-2024-01175.

19.     The EEOC issued a right to sue letter to Plaintiff for Charge No. 23A-2024-01175 on April 22, 2025.

20.     Plaintiff files this action within the applicable statute of limitations.

21.     All conditions precedent to this action have been satisfied and/or waived.

## **FACTUAL BACKGROUND**

22.     Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

23.     Defendant hired Plaintiff in 2020 as its Director of Marketing and Communications.

24.     Plaintiff received primarily positive reviews before becoming disabled.

25.     On February 2, 2024, Plaintiff fell and suffered a concussion.

26.     Plaintiff's doctor advised him to refrain from any activity considered to be "mentally or physically taxing" while he recovered from the concussion.

27.     Accordingly, Plaintiff provided notice to Defendant that he would take a medical leave of absence from work to avoid doing anything "mentally or physically taxing."

28.     Plaintiff did not plan to work for Defendant until his doctor approved of his return to work.

29.     Plaintiff's doctor confirmed that working for Defendant during his recovery would be "mentally or physically taxing" on Plaintiff's body.

30.     Accordingly, Plaintiff stayed at home during the week of February 2, 2024.

31.     However, Defendant still required Plaintiff to work remotely.

32.     The very next weekend, on February 10, 2024, one of Defendant's 10th grade students was shot while engaging in activities unrelated to Defendant.

33.     Defendant's faculty and students were shocked by this student's death.

34.     This student's death garnered attention from several media news outlets, including the local news station.

35.     To that point, Defendant required Plaintiff—its Director of Marketing and Communications—to manage its communications with the news outlets in person.

36.     At this point, Plaintiff was still suffering from the concussion and its associated symptoms.

37.     Contrary to his doctor's orders, Plaintiff engaged in an activity considered to be "mentally taxing" to preserve his job at Defendant; he creatively crafted each of Defendant's press releases regarding the shooting and had countless telephone calls with media outlet representatives.

38.     Defendant's other employees and board members, including but not limited to Tom Pyden, complimented Plaintiff on his marketing and communication efforts in regard to the shooting.

39.     By February 15, 2024, the student unfortunately passed away from his gunshot wound(s).

40.     The very next day, Vice Chair of Defendant's School Board Barbara Runyan ("Runyan") sent a faculty wide email praising two of Defendant's board members, Tom Pyden ("Pyden") and Christina McKenna ("McKenna"), for "handling all the press relations so deftly during the crisis."

41.     Pyden and McKenna did not "handle all the press relations during the crisis," Plaintiff did.

42.     However, Defendant, through Runyan, disregarded his efforts to manage the crisis that were contrary to his doctor's orders.

7

43.     That following Tuesday, on February 23, 2024, Defendant suddenly terminated Plaintiff.

## COUNT I
## Age Discrimination in Violation of the ADEA

44.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

45.     At all relevant times, Defendant was an employer, and Plaintiff was an employee within the meaning of and covered by the ADEA.

46.     Plaintiff is a member of a protected class as a 67-year-old individual.

47.     Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his age.

48.     Defendant subjected Plaintiff to adverse employment actions, including but not limited to terminating his employment, because of his age.

49.     Any other basis purported by Defendant for Plaintiff's termination is pretextual.

50.     But for Plaintiff's age, Defendant would not have subjected Plaintiff to such adverse employment actions.

51.     Defendant acted willfully and intentionally when it violated the ADEA.

52.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of employment, career opportunities, earnings, and earning capacity;

8

mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## COUNT II
### Age Discrimination in Violation of the ELCRA

53.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

54.      At all relevant times Defendant was an employer, and Plaintiff was an employee, within the meaning of the ELCRA, M.C.L. § 37.2101.

55.     Plaintiff is a member of a protected class as a 67-year-old individual.

56.     Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his age.

57.     Defendant subjected Plaintiff to adverse employment actions, including but not limited to terminating his employment, because of his age.

58.     Any other basis purported by Defendant for Plaintiff's termination is pretextual.

59.     But for Plaintiff's age, Defendant would not have subjected Plaintiff to such adverse employment actions.

60.     Defendant acted willfully and intentionally when it violated the ELCRA.

9

61.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of employment, career opportunities, earnings, and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## COUNT III
### Disability Discrimination in Violation of the ADA

62.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

63.    At all relevant times, Defendant was an employer, and Plaintiff was an employee within the meaning of and covered by the ADA.

64.    During all relevant times, Plaintiff was disabled within the meaning of 42 U.S.C. § 12101, suffering from a concussion, which substantially limited his major life activities.

65.    Despite his disability, Plaintiff was at all relevant times qualified to perform the essential functions of his job with reasonable accommodation.

66.    Defendant, directly and/or through its agents and employees, discriminated and retaliated against Plaintiff because of his disability by refusing to provide him with reasonable accommodation and terminating his employment.

67.    But for Plaintiff's disability and need for accommodation, he would not have suffered these adverse employment actions.

10

68.     Defendant acted willfully in violating the ADA.

69.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of employment, career opportunities, earnings, and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

**COUNT IV**
**Disability Discrimination in Violation of Section 504**

70.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

71.     At all relevant times, Defendant was an employer, and Plaintiff was an employee within the meaning of and covered by Section 504.

72.     During all relevant times, Plaintiff was disabled within the meaning of 28 U.S.C. § 794, suffering from a concussion, which substantially limited his major life activities.

73.     Despite his disability, Plaintiff was at all relevant times qualified to perform the essential functions of his job with and without reasonable accommodation.

11

74.    Defendant, directly and/or through its agents and employees, discriminated and retaliated against Plaintiff because of his disability by refusing to provide him with reasonable accommodation and terminating his employment.

75.    But for Plaintiff's disability and need for accommodation, he would not have suffered these adverse employment actions.

76.    Defendant acted willfully in violating Section 504.

77.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of employment, career opportunities, earnings, and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## COUNT V
### Disability Discrimination in Violation of the PWDCRA

78.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

79.    At all relevant times, Defendant was an employer, and Plaintiff was an employee within the meaning of and covered by the PWDCRA.

80.    Plaintiff had a disability within the meaning of M.C.L. § 37.1103(d), including a concussion, which substantially limited his major life activities during relevant times.

81.     Despite his disability, Plaintiff was at all relevant times qualified to perform the essential functions of his job with and without reasonable accommodation.

82.     Defendant, directly and/or through its agents and employees, discriminated and retaliated against Plaintiff because of his disability by refusing to provide him with reasonable accommodation and terminating his employment.

83.     But for Plaintiff's disability and need for accommodation, he would not have suffered these adverse employment actions.

84.     Defendant acted willfully in violating the PWDCRA.

85.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of employment, career opportunities, earnings, and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## **RELIEF REQUESTED**

For all the foregoing reasons, Plaintiff Roger Jankowski demands judgment against Defendant as follows:

a.      Declare the practices and actions of Defendant as unlawful employment practices in violation of the ADA, Section 504, Michigan's PWDCRA, the ADEA, and Michigan's ELCRA;

b.      Award compensatory damages for monetary and non-monetary loss in whatever amount Plaintiff is found to be entitled;

c.      Award exemplary damages in whatever amount Plaintiff is found to be entitled;

d.      Award lost wages and benefits, past and future, and front pay in whatever amount Plaintiff is found to be entitled;

e.      Award emotional distress damages;

f.      Award interest, costs, and reasonable attorney fees; and

g.      Award whatever other equitable relief this Court finds appropriate.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

NOW COMES Plaintiff Roger Jankowski, by and through his attorneys, NACHTLAW, P.C., and hereby demands a trial by jury in the above-captioned matter for all issues so triable.

Respectfully submitted,

**NACHTLAW, P.C.**

/s/ David A. Nacht
David A. Nacht (P47034)
*Attorney for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

Dated: July 21, 2025